# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

|  |  |  |
|---|---|---|
| MANIMEGALAI LOGANATHAN, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 4:25-cv-120 |
| FERGUSON ENTERPRISES LLC, | ) ) | |
| *Defendant.* | ) ) ) | |

**DECLARATION OF RAJAT NAIR**

I, Rajat Nair, hereby declare as follows:

1.      I am over the age of eighteen (18) years and am competent to make this declaration.

2.      I make this declaration based on my personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently to these facts.

3.      I am currently a Director, AI Technology & Innovation at Ferguson Enterprises, LLC ("Ferguson").

4.      I have been employed by Ferguson since January 28, 2008. I am based at Ferguson's headquarters in Newport News, Virginia.

5.      I am originally from India. I am an immigrant who was previously on a work visa before obtaining permanent residency.  I became a United States citizen in March 2026.

6.      I have been employed by Ferguson in various technology roles of increasing responsibility for over eighteen years.

7.      Ferguson is the largest distributor of plumbing supplies, pipes, valves, fittings, waterworks, and fire and fabrication products in the United States.

1

Docusign Envelope ID: F569B1EC-9B2A-8079-8292-23095556EB79

8. Ferguson hired Manimegalai Loganathan ("Loganathan") in July 2018. Before she was promoted to a management position, she held a Business Systems Analyst position. Loganathan worked on Ferguson's backend engineering team, supporting Ferguson's software delivery lifecycle.

9. Loganathan is an immigrant from India. Ferguson sponsored her H-1B visa application and assisted her in the process of applying for permanent residency and Permanent Labor Certification with the United States Department of Labor.

10. I was Loganathan's direct supervisor from June 1, 2021 through September 29, 2023. I was also Loganathan's direct supervisor from December 1, 2023 through October 31, 2024.

11. As an individual contributor between July 2018 and November 2023, Loganathan was an effective performer and received "Effective" or "Highly Effective" performance reviews in her annual reviews, which equates to a three or a four on Ferguson's five-point employee rating scale.

12. On December 1, 2023, Loganathan was promoted to the role of Manager – Software Engineering, in which she was assigned to supervise multiple teams supporting Ferguson's shared services software. I was Loganathan's direct supervisor from the time of her promotion until November 1, 2024, when Michelle Hicks became her manager as part of an organizational restructuring.

13. Beginning in June 2024, in connection with Loganathan's forthcoming annual evaluation and pursuant to Ferguson guidance to managers to solicit feedback from other associates for a full 360 view of the associate being reviewed, I solicited feedback from colleagues, including peers, supervisors, and direct reports, on Loganathan's performance in her new

2

Docusign Envelope ID: F569B1EC-9B2A-8079-8292-33095556ED79

managerial role. In at least one instance, a Ferguson associate submitted feedback on Loganathan unprompted.

14.     Loganathan received some positive feedback, but also received significant constructive criticism from multiple colleagues regarding her management style, including concerns about interrupting during meetings, dismissive communications, attempting to steer decisions in areas where she lacked expertise, micromanagement, and not following proper reporting hierarchies.

15.     Managers, including myself, noted that Loganathan was not receptive to this negative feedback. Rather than accepting the feedback as an opportunity to improve, Loganathan would often push back on or fail to incorporate the feedback.

16.     At Ferguson, associates applying for internal opportunities are required to indicate in the application whether the associate's current manager approves of the transfer.

17.     On or around September 6, 2024, Loganathan reached out to me to receive my permission to apply for an internal Ferguson position with a different group. I responded affirmatively and gave her my manager approval to proceed. On the afternoon of September 6, 2024, I was taking my family pet to the veterinarian, which is why my availability was limited that afternoon. My reduced availability had nothing to do with Loganathan's request to explore other positions.

18.     In Loganathan's 2024 annual review, which I issued on October 2, 2024, Loganathan received an "Effective Performance" rating, a three on a five-point scale. This review was based in part on feedback received about Loganathan from her colleagues. The review also included extensive constructive feedback and reflected that she needed to continue to focus on

3

Docusign Envelope ID: F569B1EC-9B2A-8079-8292-23095556ED79

"Relationship Building," "Communication Skills and Emotional Intelligence," and "Skillset Ramp-Up" areas noted in her mid-year checkpoint evaluation eight months prior.

19.     On October 28, 2024, I spoke with Michelle Hicks about a potential performance improvement plan ("PIP") for Loganathan. The PIP was already being contemplated before Loganathan submitted her workplace complaint to human resources. The solicitation of feedback on Loganathan's performance in connection with her annual review also predated any of her complaints to human resources.

20.     On October 29, 2024, I communicated that in Loganathan's review I had attempted to address what she should do differently based on the feedback received, with the aim being positivity and encouragement to change. However, as days and weeks went by, things were deteriorating. I expressed concerns about Loganathan's performance as a manager, including that the team felt alienated and targeted by her, and that she was in ways abusing her role as a manager, and that she was not properly making changes based on coaching and feedback.

21.     In a meeting with me and Harrison Rogers on October 31, 2024, Loganathan raised concerns to about what she characterized as "retaliation" and "harassment" related to her inquiry about a transfer. At no point during this conversation did Loganathan attribute this alleged conduct to her race, national origin, or engagement in any activity protected by Title VII or the Virginia Human Rights Act.

22.     Shortly after Loganathan received her promotion, in approximately January 2024, she complained that her take-home pay after taxes was lower than she expected. I was told that this was because of a tax issue involving her previous deductions. Ferguson fixed this issue once discovered but did not require Loganathan to refund any overpayment.

Docusign Envelope ID: F569B1EC-9B2A-8079-8292-22095556EB79

23. I inquired into whether Loganathan's salary could be further increased to address her compensation concern. Loganathan's second-level Supervisor Harrison Rogers confirmed that Ferguson does not adjust employees' salaries to offset the taxes employees owe, but that Loganathan's compensation could continue to grow commensurate with her skillset and contributions.

24. In or around summer 2024, Loganathan complained that an external hire who lived in another region was offered a higher salary to perform a managerial function. However, the identified associate was an external hire, had more extensive professional and management experience than Loganathan, held a platform and infrastructure role (rather than the development role held by Loganathan), and was in a different geographical market. The comparison was not an apples-to-apples comparison.

25. Loganathan's complaints to Ferguson of which I was aware were devoid of any allegation—let alone evidence—that her treatment had anything to do with her race or national origin.

26. In connection with an organizational restructuring, Michelle Hicks became Loganathan's manager on November 1, 2024.

27. Loganathan requested a transfer to an individual contributor position during the PIP process, but no such roles were available at the time.

28. Ultimately, after more than two months on the PIP, Ferguson did not see sufficient improvement on the documented performance issues and encountered Loganathan's continued resistance to accept the feedback about her. For these reasons, Ferguson terminated her employment on February 11, 2025.

Docusign Envelope ID: F569B1EC-9B2A-8079-8292-22095556EB79

29.     I am familiar with the employment and performance history of Will Parks and Jeanine Wandera, two associates identified by Loganathan as comparators. Unlike Loganathan, both Parks and Wandera were performing in individual contributor, rather than manager, roles, and accordingly neither exhibited performance concerns around personnel management. Instead, each exhibited performance concerns associated with technical performance aspects of their software development roles.

30.     Both Parks and Wandera were receptive to and attempted to incorporate performance feedback, which distinguished their situations from Loganathan's.

31.     Wandera was placed on a PIP and her employment terminated during the PIP period.

32.     Loganathan has alleged that I told her on three separate occasions that her pay could not match with U.S. citizen peers due to her visa status and because she is Indian. I did not make these alleged statements.  I am myself an Indian immigrant who was previously on a work visa sponsored by Ferguson.

33.     Loganathan's salary at Ferguson was not based on her race, national origin, or visa status.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on the date set forth below.

Signed by:

Rajat Nair

358F4002A7A7415...

Rajat Nair

Date:     July 17, 2026 | 2:23 PM EDT

6