**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| MANIMEGALAI LOGANATHAN,<br><br>*Plaintiff*,<br><br>v.<br><br>FERGUSON ENTERPRISES LLC,<br><br>*Defendant*. | Civil Action No. 4:25-cv-120 |

**DEFENDANT FERGUSON ENTERPRISES, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE***

Defendant Ferguson Enterprises, LLC ("Ferguson"), by counsel, submits this Memorandum of Law in support of its Motion *in limine*. Ferguson seeks an order precluding Plaintiff Manimegalai Loganathan ("Loganathan") from offering any argument, evidence, testimony, insinuation, or reference to her residency application and possible effects if it is denied.

## I. INTRODUCTION

This is a single-plaintiff employment discrimination and retaliation case, based on alleged national origin and race discrimination. This case does not (and cannot) involve claims for discrimination based on immigration status, or for a breach of a legal duty to support Loganathan's pursuit of federal immigration benefits. Nonetheless, Ferguson expects that Loganathan will attempt to focus the jury on her concerns about her and her family's legal status in the United States, and to blame Ferguson for the potential outcomes she fears regarding their legal status. However, speculation concerning potential impacts to the future resolution of Loganathan's pending permanent residency application is not relevant to any portion of her claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Virginia Human Rights Act ("VHRA").

Moreover, in addition to Ferguson not owing Loganathan any legal duty regarding her application, given her witness disclosures and deposition testimony, she is unable to proffer admissible evidence to support a theory that Ferguson damaged her immigration prospects. And crucially, turning this case from an employment discrimination action into a mini-trial about whether Ferguson is culpable for Loganathan's anticipated future immigration status fails both the relevance requirement under FRE 401 and balancing test of FRE 403. Accordingly, Ferguson's Motion *in limine* should be granted and Loganathan should be precluded from offering argument, evidence, testimony, or reference to: (1) Loganathan's or her family's expected ability to remain in the United States or otherwise receive immigration status or benefits; (2) any claim or argument that Ferguson owed Loganathan a legal obligation to assist with her visa or permanent residency application; and (3) claimed damages based on a possible loss of immigration status or delays to her visa processing or PERM application.

## II. <u>BACKGROUND</u>

Loganathan's lawsuit claims that her former employer, Ferguson, discriminated against her based on her race and national origin in violation of Title VII and the VHRA. Am. Compl., Dkt. No. 18 ¶¶ 1-2. Loganathan, an Indian citizen who was first hired by Ferguson in 2018, was employed pursuant to various work visas, including an H-1B visa that Ferguson sponsored. Opp'n Mot. Summ. Judgment, Dkt. No. 42 at 4 ¶¶ 3-4. Beginning in 2022, Ferguson sponsored Loganathan's employment-based permanent residency application, including pursuit of a required Permanent Labor Certification ("PERM") through the Department of Labor. Loganathan Decl., Dkt. No. 41 ¶ 15. However, in November 2024, Ferguson informed Loganathan that it was pausing the processing of her I-140 form due to its concerns about her performance as a manager. *Id.* ¶ 17. In the ensuing weeks, Loganathan was formally placed on a Performance Improvement Plan, and

on February 11, 2025, her employment with Ferguson was terminated. Opp'n Mot. Summ. Judgment, Dkt. No. 42 at 18, 20 ¶¶ 42, 50. Before her termination, Loganathan accepted a position with HTC Global Services. *Id.* at 20–21 ¶ 51. HTC sponsored her H-1B visa and is currently sponsoring her application for permanent residency. **Ex. 1**, Dep. Tr. at 78:2–81:17, 117:24–118:4, 128:4-13.

At her April 2026 deposition, Loganathan testified that her H-1B visa is expiring in November 2026, and she is concerned that her permanent residency application may not be processed in time by the United States government. *Id.* at 80:4–82:1. Ferguson expects that Loganathan will focus a significant portion of her presentation at trial speculating about the outcome of her permanent residency application and the impact it may have on her and her family. Ferguson expects Loganathan will blame Ferguson for the possibility that her application is not granted by the federal government because of Ferguson's decisions to pause the processing of her visa and later to terminate her employment. Specifically, Loganathan's initial disclosures, which were not amended or otherwise supplemented in discovery, attribute her claimed $250,000 in emotional distress damages entirely to "treatment for the trauma she has gone through in, *inter alia*, dealing with immigration issues vis-à-vis her unlawful termination." **Ex. 2**, Pl.'s Initial Disclosures § C. Further, in opposition to Ferguson's Motion for Summary Judgment, Loganathan argued that Ferguson's "placement of [her] expedited I-140 processing on hold pending the performance process" was "[p]erhaps the most critical form of adverse employment action undertaken by Ferguson" for purposes of her employment discrimination and retaliation claims. Opp'n Mot. Summ. Judgment, Dkt. No. 42 at 28-29, 36. And in her Rule 26(a)(3) disclosures, Loganathan disclosed that in addition to herself, the witnesses she intends to call to testify at trial are four family members—her husband, brother-in-law, father-in-law, and mother-in-law—none

of whom had any involvement in her employment relationship with Ferguson or other factual allegations that are the subject of her complaint. **Ex. 3**, Pl's Pretrial Disclosures § I; **Ex. 2**, Pl.'s Initial Disclosures § A.

## III. ARGUMENT

This is an employment discrimination and retaliation case, not an immigration case. Loganathan's anticipated attempt to shift the focus at trial from her employment discrimination claims to her fears about her and her family's immigration status should be rejected. Specifically, for the reasons that follow, Ferguson asks the Court to prohibit the introduction of evidence and testimony regarding: (1) Loganathan's or her family's expected ability to remain in the United States or otherwise receive immigration status or benefits; (2) any claim or argument that Ferguson owed Loganathan any obligation to assist with her visa or PERM application; and (3) any claim or argument that Loganathan is entitled to damages related to her loss of immigration status or delays to her visa processing or PERM application, including based on emotional distress about the same.

### A. Loganathan Does Not Allege and Cannot Establish That Ferguson Owed Any Duty to Sponsor Her Permanent Residency Application.

Loganathan's Amended Complaint makes no allegation that Ferguson owed her a duty to sponsor her visa or permanent residency application, or to pay for expedited processing of the same. *See* Am. Compl., Dkt. No. 18. Nor did she bring any claim or allege any damages based on impacts to her immigration status. *See id.* ¶¶ 3, 27, 35, 39, D. Although Ferguson had no obligation to sponsor Loganathan's continued visa and permanent residency applications, Ferguson did so for years. *See* **Ex. 1**, Dep. Tr. at 117:24–119:2; Pl.'s Opp'n Mot. Summ. Judgment, Dkt. No. 42 at 4 ¶ 4. Loganathan acknowledged that Ferguson's support of her visa was "tied to [her] job" and that Ferguson would not be obligated to continue assisting with her

permanent visa application process if she resigned or was terminated. **Ex. 1**, Dep. Tr. at 127:11-22.

Loganathan cannot prosecute a claim for citizenship status discrimination or denial of a visa in this Title VII and VHRA litigation. "[C]itizenship is not a protected characteristic under Title VII," and thus "discrimination based on citizenship is not itself prohibited by Title VII." *Zhang v. Nat'l Pub. Radio, Inc.*, No. CV 25-699, 2025 WL 4033858, at *8 (D.D.C. Dec. 18, 2025) (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973)); *see also* Va. Code § 2.2-3900(B) (excluding citizenship, immigration, and visa status from list of protected classifications under the VHRA); Pl.'s Opp'n Mot. Summ. Judgment, Dkt. No. 42 at 27 (acknowledging that immigration status is not a protected Title VII category). Accordingly, neither Title VII nor VHRA—the only statutes Loganathan sues under—gives rise to a legal claim for failure to support a citizenship application, discrimination based on visa status, or disparate impact based on immigration status.

Moreover, any Ferguson sponsorship of Loganathan's visa or permanent residency application was bounded by the requirements of federal immigration law, which have again changed this year. Specifically, Ferguson's sponsorship of Loganathan's application for permanent residency on the basis of being a skilled worker required Ferguson to certify that her work "was not of a temporary or seasonal nature," 8 U.S.C. § 1153(b)(3)(A)(i), and that Ferguson expected her position to be "[p]ermanent," 20 CFR 656.3 (defining "Employment" for purposes of the Department of Labor's "PERM" certification). *See In re Albert Einstein Med. Ctr.*, 2009-PER-00379, 2011 WL 5901395, at *43 (BALCA Nov. 21, 2011) (en banc) ("[T]he regulatory requirement of an offer of permanent employment is focused on a snapshot of the good faith intention of the employer at the time the labor certification is filed to make an offer of permanent employment — that is, indefinite employment of a lasting and continuous nature . . . .").

Accordingly, if Ferguson could not certify that it intended to permanently employ Loganathan, due to performance issues or otherwise, it was barred from providing the requisite endorsement of Loganathan's PERM application.

In short, Loganathan does not have a viable legal claim based on the processing of immigration applications or impacts to her immigration status in the United States that would make testimony on that issue relevant. *See* Fed. R. Evid. 401.

### B. Ferguson's Pause of Premium Processing of Loganathan's Visa Was Not an Adverse Employment Action.

The record and applicable legal principles do not support Loganathan's attempt to use the pause on her permanent residency application as evidence of an "adverse employment action." Courts evaluating whether an employer's visa sponsorship decision constitutes an adverse employment action under Title VII consider whether the employer "withdrew an expected sponsorship, making the employer's action effectively a termination." *Sadare v. Bosch Auto. Serv. Sols. Inc.*, No. 19-CV-3083 (NEB/ECW), 2022 WL 2992788, at *5 (D. Minn. July 28, 2022) (collecting cases and finding adverse employment action where employer's decision not to sponsor renewed H-1B visa resulted in expiration of work authorization three months later). Crucially, "the mere failure to sponsor or continue sponsoring a visa application generally cannot be considered an adverse employment action." *Samuel v. Metro. Police Dep't*, 258 F. Supp. 3d 27, 44 (D.D.C. 2017) (citing *Kanungo v. Univ. of Kentucky*, 1 F. Supp. 3d 674, 683 (E.D. Ky. 2014)). *Cf. Doe v. Teachers Council, Inc.*, 757 F. Supp. 3d 1142, 1171 (D. Or. 2024) (finding adverse employment action where decision to discontinue visa sponsorship "effectively constituted a decision to prevent Doe from accepting the position at the new host school and bar her from future employment opportunities at other schools"). In *Kanungo*, a case where an employer allegedly delayed in submitting paperwork but had no affirmative duty to continue to sponsor the employee's

visa, the court concluded that "the delay of visa application processing, or even the decision to not sponsor an H1B visa, does not constitute an adverse employment action." 1 F. Supp. 3d at 683.

Here, Loganathan makes no argument (and the record does not support) that the delay in advancing her permanent residency application was "effectively a termination." *See Sadare*, 2022 WL 2992788, at *5. To the contrary, she admits that her H-1B visa remains valid until November 2026, roughly two years after Ferguson paused its processing (and more than 18 months after Ferguson terminated her employment). **Ex. 1**, Dep. Tr. at 80:4–82:1. Accordingly, Loganathan's adverse action theory fails and does not make her immigration processing or status relevant.

### C. Loganathan Cannot Recover Damages Based on Speculative Impacts to Her Immigration Status.

Additionally, the speculated impacts to Loganathan's immigration and visa status do not give rise to recoverable damages under Title VII or the VHRA. The delay in Loganathan's visa processing cannot support her claim for emotional distress damages. In Loganathan's initial disclosures, she claims $250,000 in "emotional distress damages" based solely on "the trauma she has gone through in, *inter alia*, dealing with immigration issues vis-à-vis her unlawful termination." **Ex. 2**, Pl.'s Initial Disclosures § C; *see also* **Ex. 1**, Dep. Tr. at 100:1-22 (attributing "peak" mental health symptoms to learning "that my visa is on hold because of my performance reason").[1] To recover emotional distress damages in an employment discrimination claim, though, the alleged damages must be directly tied to the discriminatory or retaliatory conduct. *See Hetzel v. Cnty. of Prince William*, 89 F.3d 169, 171–72 (4th Cir. 1996).

[1] Rule 26 and Rule 37 combine to prohibit Plaintiffs from presenting damages theories that are not disclosed pursuant to initial or supplemental Rule 26(a)(1) disclosures. *See* Fed. R. Civ. P. 26(a), (e), 37(c)(1); *Deque Sys. Inc. v. Browserstack, Inc.*, 177 F.4th 585, 594–96 (4th Cir. 2026) (affirming exclusion of damages evidence not adequately disclosed or supplemented pursuant to Rule 26(a)).

A Title VII plaintiff seeking emotional distress must "show a causal connection between the violation and her emotional distress." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F. 3d 639, 653 (4th Cir. 2002). Further, this causal connection "must be between the distress and the violation itself, not the benefit denied." *Id.* (affirming nullification of jury award for emotional distress damages based on purported consequences of departure from employment, rather than discrimination). As discussed in Section III.B, the temporary pause in processing one step in Loganathan's permanent residency application is not an adverse action, nor a breach of a legal duty, and thus not a violation of Title VII or the VHRA.

Further, any impact on Loganathan's immigration status based on Ferguson's conduct is separate from, and at a minimum, downstream from any adverse employment action, and it cannot give rise to emotional distress damages in this case. *See, e.g.*, *Stepper v. England*, 14 F. App'x 859, 860 (9th Cir. 2001) (refusing to award compensatory damages under Title VII where "[t]he causal nexus" between her alleged harm and defendant's discriminatory conduct "was too attenuated"). Loganathan's damages theory would need to establish that but-for Ferguson's discrimination, her immigration application would have been filed, adjudicated favorably by the executive branch of the federal government, and that the visa would have timely come available to her before her H-1B status expired. Of course, this relies on a process managed by the executive branch of the federal government, not Ferguson, breaking any but-for causal chain related to alleged employment discrimination by Ferguson.

Loganathan's theory also requires additional evidence. As Loganathan admits, her current employer, HTC is sponsoring her work visa and her application for permanent residency. **Ex. 1**, Dep. Tr. at 78:2–81:17, 117:24–118:4, 128:4-13. Accordingly, Loganathan would need to establish that she would have received a more favorable result in her application process had she

remained employed with Ferguson, rather than through the process sponsored by her current employer. But she has disclosed no expert witness capable of testifying about these issues, has admitted that her concerns were grounded in what she "was told from my employer," HTC, and has not identified any other witnesses capable of testifying to this issue based on personal knowledge. *See id.* at 81:9–82:3; **Ex. 3**. Accordingly, in addition to being wholly speculative, any such testimony would be inadmissible under FRE 602 and 701, which require personal knowledge and limit the extent to which lay witnesses (like Loganathan, her family members, and the Ferguson employees she has identified in her pretrial disclosures) can testify about specialized issues. It would also be limited by Rule 802 to the extent Loganathan seeks to testify about what she "was told" by an unidentified, undisclosed HTC employee. *See* **Ex. 1**, Dep. Tr. at 81:9–82:3; Fed. R. Evid. 802.

**D. Any Denial-of-Visa Argument is Impermissibly Speculative.**

Plainly, any testimony as to liability or damages based on the possible future denial of Loganathan's permanent residency application is inadmissible as impermissibly speculative. "[S]peculative testimony about uncertain future consequences is not admissible testimony." *Mountain Valley Pipeline, LLC v. 5.88 Acres of Land*, No. CIV 7:19-cv-00225, 2021 WL 1235377, at *7 (W.D. Va. Mar. 31, 2021) (Internal quotation marks omitted). To date, Loganathan's permanent residency application remains pending, and is subject to a process sponsored by her current employer and controlled by the federal government. Loganathan has admitted in her deposition that she lacks personal knowledge regarding the prospects of her visa application. **Ex. 1**, Dep. Tr. at 81:9–82:3. And regardless, any such testimony would be inherently speculative and based on numerous factors outside of either Ferguson's or Loganathan's control, most notably the

actions of the United States government's immigration authorities.[2] Such speculation is not admissible. *See Jones v. Colonial Life & Accident Ins. Co.*, 178 F.3d 1284, 1999 WL 261858, at *2 (4th Cir. May 3, 1999) (affirming exclusion of plaintiff's speculation about future customer renewals as "entirely speculative and outside his firsthand knowledge" pursuant to Rule 701); *Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 862–63 (7th Cir. 2009) (excluding lay opinion testimony about expected profits from drug that had not been approved by the FDA and required a corporate partner and market analysis).

Nor will there be any basis for the jury to award damages on this contention at trial next month. As Loganathan has testified, her current visa remains active until November 2026 and her permanent residency application remains in process. **Ex. 1**, Dep. Tr. at 80:11-20, 81:9-17. Accordingly, Loganathan is unable to present a ripe claim for damages based on a possible immigration injury, and therefore any evidence brought in support of this non-actionable claim should be excluded. *See Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 724–25 (4th Cir. 2021) (holding claim for damages based on anticipated future injury that has yet to occur is not ripe for adjudication and subject to dismissal).

### E. Evidence of Downstream Impacts of Loganathan's Termination on Loganathan's Immigration Status Fails FRE 403 Balancing.

In addition to these myriad evidentiary issues, an extensive, speculative presentation at trial about the future disposition of Loganathan's (or her family's) immigration applications fails the FRE 403 balancing test. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

[2] The speculative nature of this testimony would be exponentially multiplied to the extent she seeks to adduce evidence not just about the government's processing of her own visa and residency status, but also that of her husband, children, or other extended family members.

presenting cumulative evidence." Here, even assuming, arguendo, any minimal relevance, the probative value of speculative testimony about Loganathan's or her family's immigration status is substantially outweighed by the risk of confusing the actual triable issues, misleading the jury, and wasting time, by distracting from the employment discrimination and retaliation claims that form the basis of her lawsuit. *See* Fed. R. Evid. 403.

It would also cause unfair prejudice. "Even in cases where immigration status does carry some degree of weight, it poses a serious risk of unfair prejudice under Rule 403." *EEOC v. Matamoros*, No. 15-1563-RAJ, 2017 U.S. Dist. LEXIS 38249, at *4 (W.D. Wash. Mar. 16, 2017); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1074 (9th Cir. 2004) (precluding discovery into Title VII plaintiffs' immigration status and concluding immigration status "is irrelevant to the question of liability."). This case is fundamentally about whether Ferguson's performance management and ultimate termination of one of its employees was performance-based or motivated by race or national origin discrimination, or by retaliation for engagement in protected activity under Title VII or the VHRA. It is not a trial about whether Loganathan or her family should be permitted to stay in the country, or whether Ferguson should have continued to employ her so that she could maximize her prospects of receiving permanent residency authorization from the federal government. Allowing Loganathan to focus the jury on her speculation about the immigration consequences of her PIP and termination, or whether she and her family should receive permanent residency status, rather than whether she experienced prohibited discrimination, has the potential to unfairly inflame the jury, prejudice Ferguson, and distract from the issues and merits of the case. *See, e.g.*, *United States v. Bustamante-Martin*, No. 5:15-CR-103-FL-1, 2016 WL 5874986, at * 1 (E.D.N.C. Oct. 7, 2016) (excluding evidence about potential immigration

consequences of a guilty verdict pursuant to Rule 403). Accordingly, such testimony and evidence should be excluded under Rule 403.

## IV. CONCLUSION

For the above reasons, the Court should grant Ferguson's Motion *in limine*.

**Respectfully Submitted**
**FERGUSON ENTERPRISES, LLC**
By Counsel

*/s/ Robert W. McFarland*

Robert W. McFarland (VSB No. 24021)
Amy Morrissey Turk (VSB No. 44957)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510
T: (757) 640-3711
F: (757) 640-3942
rmcfarland@mcguirewoods.com
aturk@mcguirewoods.com

Richard J. Batzler (VSB No. 95689)
MCGUIREWOODS LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22102
T: (703) 712-5000
F: (703) 712-5050
rbatzler@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send an electronic notification of the same (NEF) to all counsel of record.

**FERGUSON ENTERPRISES, LLC**
By Counsel

*<u>/s/ Robert W. McFarland</u>*

Robert W. McFarland (VSB No. 24021)
McGuireWoods LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510
T: (757) 640-3711
F: (757) 640-3942
rmcfarland@mcguirewoods.com

*Counsel for Defendant Ferguson Enterprises, LLC*