**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

| | |
|---|---|
| MANIMEGALAI LOGANATHAN,<br><br>Plaintiff,<br><br>v.<br><br>FERGUSON ENTERPRISES LLC,<br><br>Defendant. | Case No. 4:25-cv-120 |

**OPINION & ORDER**

Plaintiff Manimegalai Loganathan sued her former employer, Defendant Ferguson Enterprises LLC, alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Virginia Human Rights Act (VHRA). Ferguson moved for summary judgment. The discrimination claims do not survive, because the plaintiff does not raise a genuine dispute as to whether she was fulfilling Ferguson's expectations under a performance improvement plan (PIP) at the time she was fired (and no other theory of adverse employment action is viable). The retaliation claims fail too, because the plaintiff does not demonstrate that she engaged in conduct protected under Title VII. Therefore, Ferguson's motion will be granted.

## I. BACKGROUND

The following undisputed facts are sufficient for the Court to reach a decision:

1. The plaintiff is an immigrant from India who initially worked for Ferguson on an F-1 student visa. Ferguson then sponsored her H-1B visa application

and assisted her in the process of applying for permanent residency and permanent labor certification. ECF No. 37, Statement of Facts (SOF) ¶ 4; ECF No. 42, SOF ¶ 4; ECF No. 37-1 ¶ 9; ECF No. 37-4 at 3:24–4:6; ECF No. 41 ¶¶ 15–18.

2. As an individual contributor between July 2018 and November 2023, Loganathan was an effective performer and received "effective" or "highly effective" performance ratings in her annual reviews, which respectively equate to a three or a four on Ferguson's five-point employee rating scale. ECF No. 37, SOF ¶ 5; ECF No. 42, SOF ¶ 5; ECF No. 37-1 ¶ 11; ECF No. 37-3 at 12.

3. On December 1, 2023, Ferguson promoted the plaintiff to a manager role and assigned her to supervise multiple teams. ECF No. 37, SOF ¶ 6; ECF No. 42, SOF ¶ 6; ECF No. 37-1 ¶ 12; ECF No. 41 ¶ 5.

4. In June 2024, Feguson solicited feedback from the plaintiff's colleagues regarding the plaintiff's performance in her new role. ECF No. 37, SOF ¶ 8; ECF No. 42, SOF ¶ 8; ECF No. 37-1 ¶ 13; *See* ECF No. 37-6.

5. The responses included some positive feedback but also "extensive constructive criticism." ECF No. 37, SOF ¶ 9; *see* ECF No. 42, SOF ¶ 9; *see* ECF No. 37-6.

6. Other Ferguson colleagues and vendors submitted additional negative feedback about the plaintiff in the fall of 2024. ECF No. 37, SOF ¶ 10; ECF No. 42, SOF ¶ 10; *see* ECF No. 37-7.

7. On September 6, 2024, the plaintiff sought and received her manager's permission to apply for position with a different group at Ferguson. ECF No. 37, SOF ¶¶ 24, 26; ECF No. 42, SOF ¶¶ 24, 26; *see* ECF No. 37-18.

8. On October 31, 2024, the plaintiff told a Ferguson executive that she had "noticed significant changes in [her manager's] availability and communication, as well as some intimidating behavior, accompanied by a reduction in [] responsibilities," "after [she] expressed [interest] in applying for internal roles on [September 6, 2024]." The plaintiff also stated that "this situation may be perceived as retaliation or harassment." ECF No. 37, SOF ¶ 31; ECF No. 42, SOF ¶ 31; *see* ECF No. 37-18 at 3.

9. Also on October 31, 2024, the plaintiff told her manager and the Ferguson executive that she "felt retaliation and [workplace] harassment." ECF No. 37, SOF ¶ 32; ECF No. 42, SOF ¶ 32; *see* ECF No. 37-17.

10. In an annual review the plaintiff's manager issued on October 2, 2024, the plaintiff received an "effective performance" rating. ECF No. 37, SOF ¶ 33; ECF No. 42, SOF ¶ 33; *see* ECF No. 37-19.

11. The annual review also included "extensive constructive feedback," including from the plaintiff's colleagues. ECF No. 37, SOF ¶¶ 34–35; ECF No. 42, SOF ¶¶ 34–35; *see* ECF No. 37-5.

12. Ferguson received additional negative feedback about the plaintiff after her 2024 annual review. ECF No. 37, SOF ¶ 38; ECF No. 42 ¶ 38; *see* ECF Nos. 37-9, 37-20.

13. On November 5, 2024, the plaintiff met with a new manager and discussed "feedback from multiple people from [the plaintiff's] group as well as outside of [her] group" and the manager's desire to "create a plan that will provide [the plaintiff] success towards where [she] need[s] to be." ECF No. 37 SOF ¶ 40; ECF No. 42, SOF ¶ 40; ECF No. 37-21 at 4.

14. On November 12, 2024, the plaintiff sent an email to a Ferguson executive that mentioned "retaliation or harassment." ECF No. 37, SOF ¶ 44; ECF No. 42, SOF ¶ 44; ECF No. 37-24 at 3 (asserting "changes" in the manager's "availability and communication, as well as some intimidating behavior, accompanied by a reduction in [her] responsibilities . . . may be perceived as retaliation or harassment").

15. On or about November 13, 2024, the plaintiff submitted a request for investigation through Ferguson's human resources portal, explaining that she "ha[d] been feeling micromanaged." ECF No. 37, SOF ¶ 45; ECF No. 42, SOF ¶ 45; *see* ECF Nos. 37-25, 37-26.

16. On November 21, 2024, Ferguson placed the plaintiff on a PIP. ECF No. 37, SOF ¶ 42; ECF No. 42, SOF ¶ 42; *see* ECF No. 37-23.

17. Ferguson terminated the plaintiff's employment on February 11, 2025. ECF No. 37, SOF ¶ 50; ECF No. 42, SOF ¶ 50; *see* ECF No. 37-1 ¶ 28; ECF No. 41 ¶ 52.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do that, the movant must support their assertions as to undisputed facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

If the moving party is successful in the first instance, then the burden "shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial." *Gnik*, 93 F.4th at 200 (citation and quotation marks omitted); *see Celotex*, 477 U.S. at 324. "The facts and all justifiable inferences arising therefrom must be viewed in the light most favorable to the non-movant." *Gnik*, 93 F.4th at 200 (citation omitted). However, if the non-movant "fails to properly support an assertion of fact

or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court is not required to consider any materials in the record outside what the parties include with their briefing. Fed. R. Civ. P. 56(c)(3).

### B. Title VII Discrimination Claims

Title VII outlaws employment discrimination based on race, color, religion, sex, or national origin and prohibits employers from retaliating against employees for complaining about unlawful discrimination. 42 U.S.C. §§ 2000e-2(a)(1) (discrimination), 2000e-3(a) (retaliation). A plaintiff may prove a discrimination or retaliation claim through direct or indirect evidence of intentional discrimination, or through circumstantial evidence under the three-step scheme set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308–09 (2025) (discrimination); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (retaliation).

At the first step, the plaintiff bears the "initial burden" of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff clears that hurdle, then the employer may articulate a legitimate, nondiscriminatory reason for the alleged adverse action. *Id.* Finally, if the employer puts forward an

innocent rationale, the plaintiff may respond by showing that the proffered justification was a pretext for discrimination. *Id.* at 804.

Since the legal standards are identical, courts in this district analyze Title VII and VHRA discrimination claims and retaliation claims under Title VII's framework. *See, e.g.*, *Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965, 972 (E.D. Va. 2025) (discrimination); *Morton v. Froehling & Robertson, Inc.*, 786 F. Supp. 3d 965, 976 (E.D. Va. 2025) (retaliation).

## III. ANALYSIS

### A. Discrimination

To establish a prima facie case of discrimination, a Title VII plaintiff "must show that (1) [they are] a member of a protected class; (2) [their] employer took an adverse action against [them]; (3) [they] had been fulfilling [the] employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021). The plaintiff is a member of a protected class because she is Indian. *See* 42 U.S.C. § 2000e.[1] But her discrimination claim is only viable insofar as it relies on her

[1] Ferguson contends that the plaintiff's claims based on race were not exhausted before the Equal Employment Opportunity Commission (EEOC). ECF No. 37 at 14–16. Because Ferguson is entitled to judgment on all the claims in this case for other reasons, the Court declines to provide a fulsome description of its exhaustion analysis. Having considered the issue, the Court concludes that the race-based claims "are reasonably related to [the plaintiff's] EEOC charge and can be expected to follow from a reasonable administrative investigation" of her national origin claims, so exhaustion is not a bar. *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

termination from employment. Once that limitation is applied, the claim fails on the third element.

#### ***i. Adverse Employment Action***

To prove an adverse employment action, a Title VII plaintiff must show "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024); *see Herkert v. Bisignano*, 151 F.4th 157, 165 (4th Cir. 2025). The plaintiff unquestionably suffered an adverse employment action, because she was fired. *See, e.g.*, *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). She also presents two other theories of adverse action: (1) She received lower compensation than comparable peers; and (2) once she was placed on a PIP, she lost supervisory authority and "had to spend significant time accounting for all of her work." ECF No. 42 at 28. Those theories lack evidentiary support.

##### *a. Compensation*

The plaintiff claims she suffered an adverse employment action when, after she was promoted to a managerial position, she was paid less than comparable peers. ECF No. 42 at 33. That theory fails because the plaintiff does not demonstrate what any other employee was paid.

In an affidavit, the plaintiff states that she believed the salary she was offered at the time of her promotion "was near the lower end of the posted range." ECF No. 41 ¶ 19. The plaintiff's belief about her own place in the salary range does not demonstrate that any other employee was paid more than her.

The plaintiff asserts in an affidavit that her manager told her "Ferguson could not match [her] compensation to American or U.S.-citizen peers." *Id.* ¶ 20.[2] That statement may be helpful on another element of the plaintiff's claim, but it does not prove what any employee was actually paid.[3]

The plaintiff argues that a reasonable jury could infer that some pay inequity existed because she and her manager discussed "the compensation disparity." ECF No. 41 ¶ 22. But without proof of any other employee's pay, the bare mention of a disparity does not raise a triable issue as to any other employee's compensation either.

Finally, the plaintiff asserts that the salary she received when she was promoted to a management position was lower than the salary of another manager, Chen Liang. *See* ECF No. 42, SOF ¶ 12.[4] But the record contains no admissible

---

[2] The parties make much of the fact that the person who allegedly made this statement denies saying it. ECF No. 37 at 30; ECF No. 42 at 33; *see* ECF No. 37-1 ¶ 32 (denial). To be clear, the Court's decision on this element does not depend on a finding that the plaintiff's assertions about her manager's statements are 'self-serving' or 'uncorroborated.' The problem is that the manager's statements do not prove what any other employee was paid.

[3] The rest of the manager's statement—"because [the plaintiff] was Indian and on a visa"—is about the reason for the alleged compensation discrepancy. ECF No. 41 ¶ 20. It is therefore relevant to the fourth element of the discrimination claim but not to the adverse action determination.

[4] The parties appear to dispute whether subsequent changes to the plaintiff's salary matter here. *See* ECF No. 42, SOF ¶¶ 12–14. The Court can determine whether the discriminatory pay theory survives summary judgment without engaging on the possible effect of any later salary changes. Therefore, the Court assumes—as the plaintiff urges—that the *initial* salary determination is what counts.

evidence of what Liang was paid. *See* ECF No. 37 at 31 (objecting to admissibility by asserting that the interrogatory answers in which the plaintiff merely identifies Liang, without more, "are bereft of factual detail").

The plaintiff claims that she saw Liang's "offer letter," which "stated a base salary of $150,000." ECF No. 41 ¶ 24. The plaintiff separately testified that Liang's salary increased by $12,500 upon his promotion to manager, which was less than the increases the plaintiff received. ECF No. 43-2 at 11:24–12:9. But again, the plaintiff said she knew that because she saw Liang's "offer letter." *Id.* at 12:10–16.[5]

The statements in the letter may be inadmissible hearsay, because they were made out of court and the plaintiff offers them to prove that the facts they assert—i.e., the details of Liang's salary—are true. *See* Fed. R. Evid. 801, 802. Alternatively, they may be Ferguson's statements and therefore exempt from the hearsay rule, *see* R. 801(d)(2); but the Court cannot determine that, because the plaintiff did not provide the purported letter itself. Additionally, without foundational proof about the whereabouts of the letter, the plaintiff's assertions about its contents are inadmissible under Rule 1002. *See* R. 1002 (requiring an "original" to "prove [the] content" of a "writing"); *see also* R. 1004 (conditions for admitting other evidence about a document's contents). Accordingly, the plaintiff's discriminatory pay claim cannot proceed based on using Liang as a comparator. *See* Fed. R. Civ. P. 56(c)(4)

[5] The plaintiff also points to her supplemental answer to interrogatory no. 20. *See* ECF No. 42, SOF ¶ 12. But that answer merely "identifies Chen Liang" as a comparator employee; it provides no information about Liang's pay. ECF No. 37-11 at 8.

(requiring affidavits submitted on summary judgment to contain admissible evidence); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[A]n affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court.").[6]

*b. Performance Improvement Plan*

The plaintiff does not produce evidence that the PIP—or any associated change in job duties—satisfies the adverse action requirement. She asserts that "once [she] was placed on a PIP, she lost her supervisory authority and responsibility." ECF No. 42 at 28. Proof of "reassignment to a non-supervisory role" can certainly create a jury question regarding adverse action. *Contra Herkert*, 151 F.4th at 165. But the evidence the plaintiff points to contains no reference to managerial responsibilities whatsoever. *See* ECF No. 42 at 28 (citing ECF No. 41 ¶¶ 40, 51–52).[7] Meanwhile,

[6] The plaintiff contends that her pay claim can survive based on direct evidence of intentional discrimination, since her manager said the plaintiff's pay could not match American workers' because the plaintiff "was Indian and on a visa." ECF No. 41 ¶ 20; *see* ECF No. 42 at 33–34. To survive summary judgment on a discrimination claim using evidence of intentional discrimination, a plaintiff "must produce direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (cleaned up). In the Fourth Circuit, comments proffered as direct evidence of discrimination are sufficient only when they were made by a final decisionmaker involved in the alleged adverse employment action. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 289 (4th Cir. 2004). Statements by any other person—even one who "had a substantial influence on the ultimate decision" or who "played . . . a significant [role]" in the adverse action are insufficient. *Id.* at 291. The plaintiff puts on no proof that the manager who made the statement about her being 'Indian and on a visa' was a final decisionmaker with respect to the plaintiff's pay, so the statement does not save the discriminatory pay claim.

[7] Paragraph 40 asserts that the plaintiff solicited details about the basis for the decision to place her on the PIP, paragraph 51 documents dates the plaintiff was

Ferguson's evidence demonstrates that the plaintiff maintained her supervisory role during the PIP. *See, e.g.*, ECF No. 37-23 at 6 (PIP documentation, referring to the plaintiff as a "manager"), 7 (referring to the plaintiff's subordinates as "her team[]" and to other managers as the plaintiff's "peer managers").

Asking the plaintiff to "spend significant time accounting for all of her work" does not satisfy the adverse action element either. ECF No. 42 at 28. Without evidence about the weight of the burden this requirement imposed, no reasonable jury could find that it constitutes "harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355; *see Aly v. Yellen*, No. 8:23-cv-1699, 2024 WL 2053492, at *5 (D. Md. May 8, 2024) ("additional duties typically do not constitute adverse employment actions unless they are so weighty as effectively to change the basic terms of the employment") (cleaned up) (collecting cases).

***ii. Fulfilling Legitimate Expectations***

Since the plaintiff proves an adverse action only with respect to her termination from employment, to get to a jury on her discrimination claim she would have to demonstrate that she "was fulfilling [Ferguson's] legitimate expectations" at the time she was fired. *Sempowich*, 19 F.4th at 649–50. For more than two months prior to her termination, the plaintiff was on a PIP that laid out Ferguson's expectations explicitly. *See* ECF No. 37-23; ECF No. 37-1 ¶ 28; ECF No. 41 ¶ 52. The

---

away from work during the PIP period, and paragraph 52 documents the number of days the plaintiff worked during that period. ECF No. 41 ¶¶ 40, 51–52.

Court will address whether Ferguson's expectations outlined in the PIP were illegitimate, then whether the plaintiff fulfilled those expectations.

*a. Legitimacy*

The plaintiff does not overtly contend that Ferguson's expectations were illegitimate. But she does argue that evidence her performance was adequate raises a genuine dispute as to "whether her allegedly performance-based termination was pretextual." ECF No. 42 at 29; *see also id.* at 29–30 (alleging that details about Ferguson's reasoning were kept hidden). Therefore, out of an abundance of caution, the Court will analyze the legitimacy element under the summary judgment standard.

Employer expectations are illegitimate when they are a "sham designed to hide the employer's discriminatory purpose." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006) (citation omitted). Therefore, analyses of expectation legitimacy and pretext sometimes merge. *See, e.g.*, *Turner v. Town of Narrows*, No. 7:23-cv-371, 2025 WL 724062, at *7 (W.D. Va. Mar. 6, 2025), *aff'd*, No. 25-1298, 2026 WL 226876 (4th Cir. Jan. 28, 2026) (relying on evidence that "suggested that the employer purposefully was setting illegitimate expectations for the plaintiff's work performance . . . intended to trip up the plaintiff," to find that the plaintiff carried his burden with respect to the pretext component of the *McDonnell-Douglas* rubric).

Here, the plaintiff could show that Ferguson's expectations were a 'sham' by proving they were not actually based on the feedback Ferguson received about her performance. The plaintiff does not attempt to do that. Alternatively, she could show

that the feedback the expectations were based on was false. None of the plaintiff's proof suffices to raise a triable issue on that score.

First, the plaintiff points to several pieces of evidence that tend to suggest she was performing well. *See* ECF No. 42 at 29 (citing positive statements about her performance and upward pay adjustments). Critically, though, the plaintiff offers no evidence that her co-workers' criticisms were fabricated or that their reports were otherwise untrue. *But cf. Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025) (evidence that the purported reason for the plaintiff's termination was "false" sufficed to carry the plaintiff's burden under the *McDonnell-Douglas* pretext inquiry). Instead, her argument appears to be that although her subordinates repeatedly complained about her management—and reported true events—she did some good things too. That is an argument about fulfillment of expectations, not one that creates a triable question as to whether Ferguson's expectations were legitimate.

The plaintiff also claims Ferguson "stonewalled" her when she asked for "details and clarification concerning the criticism she received." ECF No. 42 at 30; *see* ECF No. 41 ¶¶ 40–41, 47, 53, 74. The Court can understand why the plaintiff may have felt, at the time, that she could not adequately respond to her co-workers' concerns without knowing "specific incidents, examples, [and] dates" and having more detail about "unmet expectations." ECF No. 41 ¶ 40. But now, with discovery concluded, the plaintiff *has* her co-workers' "complete written submissions," and she

still does not provide evidence that any of them reported false information.[8] *Id.* ¶ 74. Therefore, the contention that Ferguson kept information from the plaintiff does not create a jury question with respect to expectation legitimacy.

*b. Fulfillment*

The record evidence does not support a finding that the plaintiff was meeting Ferguson's expectations at the time she was fired. The plaintiff points to five pieces of evidence on this point:

> (1) In June of 2024, Ferguson made positive statements about the plaintiff in a "People Leader Spotlight." ECF No. 41-2 at 2; *see* ECF No. 43-2 at 51:18–22.
>
> (2) From June through September of 2024, Ferguson employees made positive comments about the plaintiff's performance. *See* ECF No. 37-6 at 3–4.
>
> (3) Effective October 1, 2024, the plaintiff received a merit-based pay increase, an upward salary adjustment, and a bonus. ECF No. 37-15 at 2.
>
> (4) In an October 2, 2024 performance review, the plaintiff received positive comments and was rated "effective." ECF No. 37-19 at 5; *see* ECF No. 37-1 ¶ 18.
>
> (5) On December 5, 2024, someone named "Paul Hoerman" gave the plaintiff a certificate bearing the word "Bravo!" that "recognized" the plaintiff for "Impact" related to "Omni Home Complex Order Support." ECF No. 41-3 at 2.

ECF No. 42 at 29.

---

[8] The plaintiff conclusorily states that she "[d]ispute[s] the validity" and the "accuracy" of some of her colleagues' feedback. ECF No. 42, SOF ¶¶ 37, 38. But she does not proffer any *evidence* that the claims they made about her conduct were false.

All but the last of these instances occurred before the plaintiff was placed on a PIP, so they do not raise a genuine dispute as to whether the plaintiff met the expectations laid out in that plan.[9] And the December 5, 2024 recognition does not alone produce a triable issue, since the plaintiff provides no proof of how "Paul Hoerman['s]" assessment of her "impact" on one particular project relates to Ferguson's expectations as articulated in the PIP. ECF No. 41-3 at 2; *see King v. Rumsfeld*, 328 F.3d 145, 149–50 (4th Cir. 2003) (other employees' opinions irrelevant where they fail to establish whether the plaintiff met the *employer's* expectations); *Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (whether a plaintiff is performing adequately depends on "the perception of the decision[-]maker" (citation omitted)).

The only adverse employment action the plaintiff demonstrates is her termination from employment. Because she does not present evidence that creates a genuine question about whether she was meeting Ferguson's legitimate expectations at that time, the Court need not engage with the unlawful discrimination element. The discrimination claims do not survive summary judgment.

---

[9] The Court's conclusion here rests on the fact that the relevant expectations are those laid out in the PIP and not whatever expectations might have preceded it. But the temporal attenuation between the plaintiff's proof and the termination decision is a separate, sufficient basis for the decision. *See Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 244 (4th Cir. 1982) (plaintiffs bear the "burden of showing that performance at the requisite level of employer expectations continued to a time reasonably close to the time of the challenged employer action"); *O'Connor v. Consolidated Coin Caterers, Corp.*, 56 F.3d 542, 547 (4th Cir. 1995) (employee's performance the calendar year prior to his August termination was irrelevant to determining whether he was meeting expectations at the time he was fired).

### B. Retaliation

Title VII prohibits an employer from discriminating against an employee who (1) "has opposed any practice made an unlawful employment practice by [Title VII]" (opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause). 42 U.S.C. § 2000e-3(a).

The plaintiff took an action protected by the participation clause when she filed a complaint with the EEOC. But the parties agree that the plaintiff's retaliation claims are "all based on conduct that occurred before she filed her [EEOC charge]." ECF No. 37 at 26; *see* ECF No. 42 at 35 (not disputing this contention). Therefore, the plaintiff must establish that she suffered an adverse employment action because she opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3.

To qualify as protected opposition, an employee's complaint must convey "a belief that the[ir] employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); *see E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (opposition protection encompasses "complain[ts] . . . about suspected violations" (quotation marks and citation omitted)). Thus, the discriminatory activity complained of must be based upon "race, color, religion, sex or national origin." *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994); *see Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011) (complaints of "harassment" were sufficient where the defendant "surely should have known" that they "likely encompassed" *illegal*

harassment); *see also Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) (unpublished) (protection only triggered when the employer understands, or should understand, that the plaintiff is opposing an unlawful practice). Accordingly, courts within the Fourth Circuit routinely hold that complaints about management conduct that would not count as illegal discrimination are not themselves protected activity. *E.g.*, *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018).

The plaintiff points to three actions she says constitute protected opposition. ECF No. 42 at 35. None do.

***i. Pay Complaint***

First, the plaintiff complained to her manager that "she was not being paid the same as her colleagues." ECF No. 37-11 at 4. But there is no indication that the plaintiff suggested the difference was based on illegal discrimination. Indeed, the plaintiff claims that in response to her complaint, the *manager* asserted that the pay gap "was due to her national origin and citizenship status." *Id.* Still, the plaintiff produces no evidence that she ever incorporated that reason into her *own* complaints, such that a reasonable jury could conclude she opposed an unlawful employment practice.

***ii. "Discrimination and Retaliation" Complaint to Management***

Second, the plaintiff told her manager and a Ferguson executive that she was experiencing "potential discrimination and retaliation" because she was "getting treated differently." ECF No. 37-4 at 15:8–17. It can be "enough" for a plaintiff to "complain of 'harassment'" without "detail[ing]" specific "incidents" of discrimination.

*Okoli*, 648 F.3d at 224. But a plaintiff does not engage in protected opposition unless they give the defendant reason to know that their complaint "likely encompasse[s]" illegal conduct. *Id.* For example, a plaintiff's "description of 'unethical,' 'degrading and dehumanizing' conduct" would "suggest severe misbehavior related to [their] identity—not a mere workplace squabble," so that failure to explicitly mention a specific form of illegal harassment would not be fatal to an opposition retaliation claim. *Id.* But here, the plaintiff's complaint contained no such substance. And no reasonable jury could conclude that the plaintiff's generic mention of differential treatment, without more, triggered Title VII's opposition protections.

***iii. Complaints through Human Resources***

Finally, the plaintiff claims she engaged in protected conduct when she "invoked Ferguson's [Equal Employment Office] or workplace-concern procedures, described targeted and retaliatory treatment, and requested investigation." ECF No. 42 at 35. But none of the evidence the plaintiff points to even so much as *alludes* to illegal discrimination.

An EEO investigation document reflects that the plaintiff claimed she was "was being harassed and retaliated [against]." ECF No. 37-12 at 2. But it makes no mention of her "race, color, religion, sex or national origin," *Balazs*, 32 F.3d at 159, or anything that could plausibly be inferred to relate to such a protected status.[10] In

[10] To be abundantly clear, the Court does not rely on the plaintiff's failure to explicitly cite a protected status by name. The problem is that nothing in the plaintiff's evidence would have given Ferguson reason to know that she was complaining about *illegal* conduct as opposed to management conduct with which she merely disagreed. *See Chang Lim*, 310 F. Supp. 3d at 604.

fact, the report does not even state that the plaintiff suggested *any* basis for the alleged unfavorable conduct; she only described the unfavorable conduct itself, claiming "she sent [her manager] a [T]eams message . . . and he didn't respond." ECF No. 37-12 at 2. And nothing about the assertion that her manager failed to respond to a Teams message could enable a reasonable jury to find that the plaintiff complained about conduct outlawed by Title VII.

The plaintiff's next three pieces of evidence merely mention that she made generic complaints. ECF No. 37-21 at 4 (plaintiff "mentioned 'workplace harassment and target[ing]'"); ECF No. 37-22 at 4 (asserting she was "undergoing potential retaliation after raising concerns to higher management"); ECF No. 37-29 at 5 (same). These references add no substance with respect to an allegation of illegal conduct, so they do not establish protected activity either.

Far from carrying her burden, the plaintiff's next citation provides an alternative, *legal* explanation for the mistreatment she complained of: In her request for an investigation through Ferguson's human resources portal, the plaintiff reported alleged mistreatment[11] after she "expressed [her] interest in exploring other

[11] The plaintiff complained that her "situation . . . worsened" after she inquired about other roles, in that she "fel[t] micromanaged" and noticed a "seem[ing]" "lack of trust." ECF No. 37-25 at 2–3. Because a successful retaliation claim does not require proof of an *actual* unlawful employment practice, the Court need not analyze whether this would constitute an adverse employment action within the meaning of Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). But while the plaintiff's subjective belief that she was experiencing discrimination can be based on something that is not actually illegal, her *complaint about that belief* still had to give Ferguson some idea that her manager had "engaged in . . . a form of employment discrimination." *Crawford*, 555 U.S. at 276. To that extent, describing

roles." ECF No. 37-25 at 2. Expressing an interest in other roles is not protected opposition under Title VII. In the same request, the plaintiff explained that she worried the worsening relationship between her manager and herself might—for reasons that are not entirely clear—produce "delays" that "could result in the loss of [her] legal status to work" in the United States. *Id.* at 3. But a fear that conduct might impact one's immigration status does not automatically transform a complaint about that conduct into protected opposition. The inquiry is still whether "the employer underst[ands], or should underst[and], that the plaintiff is opposing" an unlawful practice. *Burgess*, 466 F. App'x at 282. Since there are many lawful actions that might result in a non-citizen losing legal work status, invoking the possibility of such a change does not, by itself, trigger Title VII protection.

Lastly, the plaintiff points to an email in which she informed her manager that she would be taking a sick day because "the ongoing situation . . . ha[d] taken a toll on [her] emotional, mental, and psychological well-being." ECF No. 37-26 at 2. A description of the emotional effects of alleged mistreatment is not a complaint about the nature of the mistreatment itself. Therefore, this too is insufficient to establish protected opposition.

Because the plaintiff fails to raise a genuine dispute as to whether she engaged in protected conduct, the Court need not analyze the other elements of her retaliation causes of action. Fergusion's motion will be granted as to the those claims.

---

micromanagement and fractured trust—i.e., "management activities that would not constitute unlawful discrimination"—does not help the plaintiff carry her burden. *Chang Lim*, 310 F. Supp. 3d at 604.

## IV. CONCLUSION

Defendant Ferguson Enterprises LLC's motion for summary judgment (ECF No. 36) is **GRANTED**.

Ferguson's motion in limine (ECF No. 46) is **DISMISSED** as **MOOT**.

The Clerk is **DIRECTED** to enter judgment in favor of Ferguson and close this case.

**IT IS SO ORDERED**.

/s/ JKW

Jamar K. Walker
United States District Judge

Newport News, Virginia
September 11, 2026